IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

RONALD F. MAYHEW, and :
CONNIE D. MAYHEW :
 :
  Plaintiffs, :
 : Civil Action No.
v. : 2:14-CV-091-RWS-JCF
 :
BRANCH BANKING AND TRUST CO., :
 :
  Defendant. :

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant Branch Banking and Trust Company's motion to dismiss. (Doc. 5). It is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** and Plaintiffs' Complaint be **DISMISSED**.

## Facts And Procedural History[1]

---

[1] The Court will consider Plaintiffs' Complaint (Doc. 1) as well as orders and other filings from the state court proceedings between these parties (Docs. 5-2, 5-3, 5-4, 5-5 and 5-6). As discussed in depth below, in ruling on a motion to dismiss, the court may consider documents attached to the motion if those documents are central to the complaint and not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged").

1

On October 6, 2003 Plaintiff Connie Mayhew executed a promissory note to Defendant Branch Banking & Trust Co. ("BB&T") in the amount of $795,413.95 as well as a security deed (Doc. 1-13) in favor of BB&T for the Locust Grove Mobile Home Park recorded on November 11, 2003 in the Gilmer County Deed Record, Book 1006, Page 416. (Doc. 1 at ¶¶ 26-27). The property had previously been owned by both Plaintiffs jointly with financing from BB&T and its predecessors as evidenced by a security deed dated June 6, 2000. (*Id.* at ¶ 11). Prior to that, the property had been involved in numerous transfers and transactions including a number of questionable purported transfers and modifications by Bob E. Thomas, Plaintiffs' former business partner, and Apple Valley, Inc., the corporation owned by Thomas and Plaintiffs. (*Id.* at ¶¶ 12-19; *see also* Doc. 1-7). Plaintiffs claim that they did not learn about these apparently fraudulent deeds until after the foreclosure and believe that they evidence a conspiracy between Bob E. Thomas and the Defendant's predecessor in interest to steal the property. (Doc. 1 at ¶ 19).

On June 28, 2011, BB&T obtained a judgment on the note against Plaintiff Connie Mayhew and Plaintiff Ronald Mayhew, guarantor of the loan, in the amount of $1,009,153.97 in Gwinnett County Superior Court, Case No. 10-A-04158-4. (Doc. 1 at ¶ 29; *see also* Doc. 5-2). In that case, BB&T as plaintiff

moved for summary judgment on the note, to which the Mayhews responded, arguing that the note should not be enforced due to the apparently fraudulent deed from Mr. Thomas and outlining their allegations of a conspiracy involving Mr. Thomas and banks to steal the property. (*See* Doc. 5-3). The Gwinnett County Superior Court granted BB&T's motion for summary judgment. (*See* Doc. 5-2). Following the judgment, BB&T noticed Plaintiffs of its intent to exercise the power of sale contained in the security deed. (Doc. 1 at ¶ 32; *see also* Doc. 1-16). In response, Plaintiffs filed for an injunction to prevent the foreclosure in the Gilmer County Superior Court, Case No. 2011CV-835. (Doc. 1 at ¶ 33; *see also* Doc. 5-4). In that action, Plaintiffs raised many of the same arguments from the first case, making allegations regarding the history of the title and the alleged conspiracy of Mr. Thomas, and they argued that foreclosure laws had not been properly followed by Defendant. (*See* Doc. 5-4). The Superior Court denied the motion for a temporary injunction preventing the sale and granted summary judgment for the Defendant, making detailed findings of facts and conclusions of law including a finding that there was no cloud to the title held by Plaintiffs at the time of the foreclosure. (*See* Doc. 5-5). On November 1, 2011, Defendant conducted a non-judicial foreclosure of the property. (Doc. 1 at ¶ 35).

Plaintiffs filed this Complaint on May 2, 2014 seeking damages under

various theories of liability and requesting the foreclosure be set aside. (Doc. 1). Defendant filed this motion to dismiss on May 27, 2014. (Doc. 5). Plaintiffs filed a response to the motion to dismiss on June 11, 2014. (Doc. 9). Defendant did not file a reply.

## Discussion

Defendant brings this motion to dismiss under Federal Rules of Civil Procedure 8 and 12. Defendant first argues that Plaintiffs' claims are barred by res judicata as these matters have already been brought or should have been brought in the previous state cases. (Doc. 5-1 at 7). Defendant further argues that Plaintiffs' contention that the foreclosure was invalid as a result of the previous judgment of the note is legally inaccurate. (Doc. 5-1 at 9). Defendant also contends each substantive claim made by the Plaintiffs fails as a matter of law. (Doc. 5-1 at 10-23). Finally, Defendant argues that Plaintiffs' Complaint is impermissible under Rule 8 as a "Shotgun" pleading.[2] (Doc. 5-1 at 23).

### I.    Motion to Dismiss and Judicial Notice

Before determining whether res judicata bars Plaintiffs' claims, the undersigned addresses whether it is appropriate to take judicial notice of pleadings

---

[2] Because the undersigned recommends that all claims be dismissed as a result of res judicata and/or failure to state a claim, it is not necessary for the undersigned to determine as to whether Plaintiffs' Complaint satisfies Rule 8.

and orders in the parties' prior cases, or whether the motion to dismiss should be converted into a motion for summary judgment pursuant to FED. R. CIV. P. 12(d). *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (per curiam).

"A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999). In particular, a court may take judicial notice of the pleadings and orders in a plaintiff's prior action as matters of public record because the pleadings and orders are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy [can] not be reasonably questioned." *Horne*, 392 Fed. Appx. at 802. The pleadings and orders in the previous lawsuits are matters of public record, therefore the undersigned may take judicial notice of the documents without converting Defendant's motion to dismiss into a motion for summary judgment. *See Giles v. Wal-Mart Stores East, L.P.*, No. 3:10–CV–42 (CDL), 2010 U.S. Dist. LEXIS 115791, at *2-3 (M.D. Ga. Nov. 1, 2010) (explaining that when "evaluating whether the affirmative defense of res judicata bars a claim, a district court may properly take judicial notice of pleadings and orders in a previous case that were matters of public record").

Further, "a court may consider documents attached to the motion to dismiss

if they are referred to in the complaint and are central to the plaintiff's claim." *Starship Enterprises of Atlanta, In.c v. Coweta Cnty., Ga*, 708 F.3d 1243, 1252 n. 13 (11th Cir. 2013) (citations omitted) (finding that the district court's consideration of documents from a prior case automatically converted the motion to one for summary judgment "[b]ecause [the plaintiff] did not refer to the Superior Court petition or order in its complaint"). Plaintiffs frequently refers to both the prior actions in their Complaint and there are central to their claims as nearly each claim is based, at least in part, on an argument that the Superior Court was party to a conspiracy by issuing such judgments or that Defendant somehow committed fraud by failing to disclose the outcome of the first case to the judge in the second case. (*See generally* Doc. 1). Therefore, the undersigned may proceed with the motion as a motion to dismiss.

## II.    Motion To Dismiss Standard

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). A claim is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679. "Additionally, because Plaintiffs are acting pro se, their 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' "  *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 U.S. Dist. LEXIS 30183, at * 3 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).  " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' "  *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

## III. Res Judicata

"The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court."  *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).  "Res judicata comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as

'collateral estoppel')." *Id.* "While claim preclusion bars repetitious suits involving the same cause of action . . . , issue preclusion precludes the re-adjudication of the same issue, where the issue was actually litigated and decided in the previous adjudication, even if it arises in the context of a different cause of action." *Id.* at 1263-64. Therefore, because the state court actions did not, on their face, contain identical causes of action, the undersigned "treat[s] the instant preclusion question as one of collateral estoppel." *Id.* at 1264.

"In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Id.* at 1263. "Under Georgia law, a party relying on collateral estoppel must demonstrate that (1) an identical issue, between identical parties (or their privies), (2) was actually litigated and (3) necessarily decided, (4) on the merits in a final judgment, (5) by a court of competent jurisdiction." *Mendelson v. Southeast Mortg. of Ga., Inc.*, No. 1:11-CV-03155-TWT-GGB, 2012 U.S. Dist. LEXIS 116373, at * 17 (N.D. Ga. July 26, 2012). Under Georgia law, a defendant is required to raise every defense they claim to have, in law or fact, in their responsive pleadings or by motion. O.C.G.A. § 9-11-12. Additionally, a defendant is required to bring any compulsory counterclaims, which Georgia law defines as any claim, which at the time of the filing, "arises out of the transaction

or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." O.C.G.A. § 9-11-13.

As an initial matter, it is undisputed that the parties involved in this case and the previous case are identical and that the previous decisions were by a court of competent jurisdiction. *See 2025 Emery Highway, L.L.C. v. Bibb Cnty.*, 377 F. Supp. 2d 1310, 1362 (M.D. Ga. 2005) ("Undoubtedly, [a Georgia] Superior Court is a court of competent jurisdiction.").

The state court cases dealt with the validity of the note and the authority of the Defendant to foreclose. (*See* Docs 5-2, 5-3, 5-4, 5-5, and 5-6). Moreover, these issues were actually litigated and necessarily decided on the merits in final judgments. *See Fowler v. Vineyard,* 405 S.E.2d 678, 682 (Ga. 1991) ("[O]ne must assert all claims for relief concerning the same subject matter in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata pursuant to OCGA § 9–12–40.") (quoting *Lawson v. Watkins*, 401 S.E.2d 719 (Ga. 1991)); *see also McCracken v. City of College Park*, 384 S.E.2d 648, 649 (Ga. 1989) ("[S]o long as a party pleads but one wrong in respect to the same transaction, the cause of action is the same … and it makes no difference that the remedy sought to be applied under different procedures growing out of the

same wrong may be different.") (citation omitted).

In the first state action, BB&T brought suit against the Mayhews requesting a judgment on the note and moved for summary judgment on the basis that there was no genuine issue of material fact as to the validity of the note. (*See* Doc. 5-2; Doc. 1 at ¶ 29). The Mayhews argued in their response that the note was invalid as a result of the alleged conspiracy and, most importantly, as a result of the failure of BB&T to discover and disclose the purportedly fraudulent deeds by Bob Thomas. (*See* Doc. 5-3). The court granted BB&T's motion for summary judgment and awarded a judgment of $1,009,153.97, which included the principal amount due on the note as well as interest and fees, thereby necessarily finding that, despite the Mayhews' arguments, the note was valid. (Doc. 5-2 at 2).

In the second state action, the Mayhews filed suit challenging BB&T's ability to foreclose on the property and sought an emergency injunction preventing BB&T from doing so. (*See* Doc. 5-4; Doc. 1 at ¶ 33). The Mayhews argued that the foreclosure could not proceed as the foreclosure action "ha[d] been knowingly and willfully done in violation of state law in order to cover up for identity theft having been perpetrated by Bob E. Thomas." (*Id.* at 3). The Mayhews once again appeared to base this claim on the purported conspiracy and the fraudulent deeds. The court denied the motion for an emergency injunction with detailed findings of

facts and conclusions of law which explained that, despite the questionable deeds, no other party had an interest in the land and that BB&T had the legal authority to foreclose. (*See* Doc. 5-5). The court granted BB&T summary judgment and issued an order and final judgment dismissing the case. (Doc. 5-6 at 2).

Plaintiffs were given a full and fair opportunity to litigate these issues. Each order cited above refers to hearings on the various motions, and there is no evidence that Plaintiffs were prevented from participating in those proceedings. While Plaintiffs allege a conspiracy involving the lawyers, banks and judges, they have done so with merely conclusory accusations; they have provided no specific allegations of any actual conspiracy much less anything to demonstrate that they were not afforded a full and fair opportunity to litigate their claims. Additionally, if there were issues with the Superior Court rulings, Plaintiffs had recourse to address those concerns through direct appeal to the Georgia Court of Appeals and/or Georgia Supreme Court; however Plaintiffs make no mention of any appeal attempts.

Therefore, any issues decided in the previous state cases would be precluded. The previous cases necessarily decided the validity of the note and the legal authority of Defendant to foreclose, rejecting the argument that the allegedly fraudulent deed from Mr. Thomas or the alleged conspiracy between the parties

had any impact on the ability of Defendant to collect on the note. Further, in the second case, the state court found no issue with the security deed as a basis for foreclosure. Having been necessarily decided on the merits by a competent court these issues are precluded.

Plaintiffs' response to the motion to dismiss appears to focus on the claim that the Superior Court Judge in the hearing on the injunction instructed Plaintiffs of their ability to later object to the foreclosure sale. (Doc. 9 at 4). Plaintiffs allege[3] that Superior Court Judge Boswell, while denying the injunction, stated "everybody has a right to screw up. And BB&T can screw up if they want to and your remedy is when *they come here to confirm the sale*, your remedy is they didn't do it right because they screwed up…It seems to me…[BB&T] has the right to screw it up if you want to. And he has the right to object after it is done and over." (Doc. 1 at ¶ 33) (emphasis added). While it is difficult to see how these

---

[3] Plaintiffs assert in their Complaint that these statements were made during the hearing, however there is no official record. Plaintiffs instead provide as an exhibit to their Complaint two pages of a transcript which, by Plaintiffs' own admission, was commissioned by Plaintiffs based on a recording of the hearing which Plaintiff Ron Mayhew made on his own, unknown to the Judge or Defendant. (*See* Doc. 9 at 1-2). Plaintiffs argue that the Judge "conveniently set up the injunction hearing on this issue without a court reported [sic]," however, Georgia law only requires that Court reporters be made available for reporting, in a civil case, it is generally the responsibility of the parties in order to arrange for a hearing to be recorded. *See* O.C.G.A. § 15-7-47. Since these statements do not affect the res judicata analysis, there is no need to determine the admissibility of Plaintiffs' "transcript."

comments could impact the res judicata analysis, Plaintiffs misunderstand what Judge Boswell was attempting to inform them. Judge Boswell stated that Plaintiffs could raise objections "when [BB&T] come[s] here to confirm the sale." *Id.* Under Georgia law, a party must request a confirmation of the foreclosure in order to attempt to recoup any remaining deficiency after the foreclosure sale. O.C.G.A § 44-14-161. At that point, the plaintiffs would have been able to raise any objections to the procedure followed by the bank in the non-judicial foreclosure proceedings; the Bank would then have the burden of establishing that the foreclosure sale was properly conducted or they would not be able to collect any deficiency. *Id.*

While it is difficult to fully appreciate the context of the judge's comments working from only a limited excerpt of the purported transcript, it appears that the Judge Boswell was referring to Plaintiffs' argument that Defendant did not properly serve interested parties. (*See* Doc. 5-4 at ¶¶ 6-7). The judge's statement, when viewed with his orders (Docs. 5-5, 5-6), indicate the arguments did not impair the legal authority of Defendant to foreclose, however, if there was an issue with the process of the foreclosure, Plaintiffs' could raise those issues if Defendant brought a new action seeking to confirm the foreclosure and collect a deficiency. While the Plaintiffs would have the ability to challenge the foreclosure process if

13

the Defendant attempted to confirm the sale, this is not such an action and, even further, none of the allegations made in Plaintiffs' Complaint assert any defects with the process of the actual foreclosure. These comments clearly in no way were intended to imply Plaintiffs would be able to once again challenge validity of the note or Defendant's legal authority to foreclose and therefore have no impact on this case.

Plaintiffs maintain that they are objecting to the foreclosure sale based on the fraud of Mr. Thomas, the same argument made at the state court proceedings, and based on the argument that the initial judgment on the note operates as a cancellation or termination of the note making foreclosure inappropriate. However these are substantive arguments to support Plaintiffs' contentions that the note was invalid and Defendant had no legal authority to foreclose; they are not arguments against the application of res judicata. And while Plaintiffs' did not raise the argument that the judgment on the note somehow precluded Defendant from seeking foreclosure, Plaintiffs are not permitted to maintain a new suit every time they come up with a new reason to challenge the foreclosure; Georgia law required them to raise all claims or defenses in the initial action.[4] *See* O.C.G.A. § 9-11-12;

---

[4] Additionally, this argument solely goes to the legal authority of the Defendant to foreclose, an issue which has already been determined by the state court. However, as discussed below, even if this argument was not precluded, it is an

O.C.G.A. § 9-11-13.

Accordingly, because each of the Plaintiffs' causes of action stem from the validity of the note or the legal authority of Defendant to foreclose on the subject property, and those issues has already been litigated in the state courts, the undersigned **RECOMMENDS** that Plaintiffs' Complaint be **DISMISSED** with prejudice as barred by res judicata.

## IV.    Plaintiff's Substantive Causes Of Action

Although Plaintiffs' claims are barred by res judicata and should be dismissed, the undersigned will still proceed to Defendant's arguments that each cause of action should be dismissed for failure to state a claim.

### A.  Wrongful Foreclosure

To state a claim for wrongful foreclosure, Plaintiffs must show: "(1) a legal duty owed to them by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach and the injury them suffered; and (4) damages." *Joseph v. Fed. Home Loan Mortg. Corp.*, No. 1:12–CV–01022–RWS, 2012 U.S. Dist. LEXIS 159355, at *4 (N.D. Ga. Nov. 6, 2012).  Plaintiffs appear to argue that the foreclosure was wrongful as the note was never valid since Defendant did not

inaccurate statement of the law and has no impact on the legality of the foreclosure.

reveal an alleged "secret relationship" with Thomas[5], and that they could not have

brought the foreclosure proceeding after receiving a judgment on the note. (Doc. 1

at 12-13).

Georgia law allows the holder of a note secured by security deed flexibility

in pursuing recovery. "The law of this state is well settled that a creditor is vested

with an election of remedies and 'may, either consecutively or concurrently, pursue

any number of consistent remedies to enforce the payment of a debt until it is

satisfied.'" *Reese Developers, Inc. v. First State Bank*, 701 S.E.2d 505, 506 (Ga.

Ct. App. 2010) (quoting *Gentry v. Hibbler-Barnes Co.*, 147 S.E.2d 31, 32 (Ga. Ct.

App. 1966)). "Obtaining a judgment on the note and foreclosure of the security

---

[5] Plaintiffs' Complaint merely alleges that Defendant "never revealed the secret relationship with Thomas." (Doc. 1 at ¶ 42). Plaintiffs go on to allege "[b]ecause of the undisclosed relationship between Thomas and BB&T as revealed at trial in 2009, the original Note with BB&T is a fraud upon the Plaintiffs." (*Id.* at ¶ 45). Plaintiffs do not provide any further detail as to what that secret relationship was, why Defendant was required to disclose such a relationship or how it supports a claim for wrongful disclosure. It appears that Plaintiffs are referring to the discovery that Thomas had executed a purportedly fraudulent deed transferring an interest in the property. This argument is clearly barred by res judicata as is the exact same argument Plaintiffs raised as their defense to the first state case; an argument which they once again raised in the second state case. (*See* Docs. 5-2, 5-4). Both times the state court rejected these arguments as none of the alleged actions, even if true, would have any impact on Defendant's ability to foreclose. Therefore, the undersigned will not go through the same analysis the Superior Court judges have already used to reject this argument by Defendant. However, even if not barred, and with merit, Plaintiffs would still not be able to sustain a claim for wrongful disclosure as explained *infra*.

16

device are consistent remedies, and the utilization of one will not constitute either an election or abandonment of the other." *Hopkins v. West Publishing Co.*, 147 S.E.2d 849 (Ga. Ct. App. 1962)). Therefore, Defendant was within its rights to get a judgment on the note and then institute non-judicial foreclosure proceedings on the security deed. Despite the judgment on the note, the security deed remains valid until the debt is actually paid. *Weston v. Towson*, No. 5:04-CV-416, 2006 U.S. Dist. LEXIS 54327, at *5 (M.D. Ga. Aug. 4, 2006) ("Under Georgia law, '[a] security deed stands alone so long as the underlying debt remains, and [the holder of the deed] is not obligated to satisfy it until the debt is paid regardless of the note's enforceability.' ") (quoting *Decatur Fed. Sav. & Loan v. Gibson*, 489 S.E.2d 820, 822 (Ga. 1997)). Plaintiffs have made no allegations that the debt was already paid prior to the foreclosure sale.

Plaintiffs seek support for their position that a note is terminated following a judgment by citing a Florida state court opinion applying Florida law, *Deutsche Bank Nat'l Trust Co. v. Clarke*, No. 4d10-3156, 2012 Fla. App. LEXIS 6036 (April 18, 2012). (Doc. 9 at 7). The present case is decided under Georgia law, meaning a state court opinion from Florida has limited relevance; however, the case cited has nothing to do with the ability to foreclose based on a judgment rather than a note. Instead, the question posed in *Clarke* was whether a copy of the note was

admissible under Florida's best evidence rule when the original was already submitted to a court in a prior proceeding. *Id.* at 59.

In its motion, Defendant argues further that Plaintiffs cannot satisfy a claim for wrongful foreclosure as they have failed to allege that they are not actually in default on the mortgage, and therefore Plaintiffs have not pled facts sufficient to establish that the alleged wrongful conduct of Defendant caused Plaintiffs to suffer any harm. (Doc. 5-1 at 11). "Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims." *White v. Bank of Am., N.A.*, No. 1:12-CV-3834-WSD, 2013 U.S. Dist. LEXIS 66601, at *13-14 (N.D. Ga. May 10, 2013) (collecting cases indicating plaintiff must allege satisfaction of obligations to pay under the contract to sustain a claim for wrongful foreclosure). Plaintiffs have not alleged that they were current with their debt obligation at the time of the foreclosure, therefore, even if Plaintiffs had sufficiently alleged that defendant breached a duty to them, Plaintiffs' claim would fail as they has not alleged facts necessary to satisfy the causation element of a wrongful foreclosure claim.

Accordingly, as Plaintiffs cannot make out a claim for wrongful disclosure, it is **RECOMMENDED** that the first cause of action "Wrongful Disclosure" be **DISMISSED**.

## B. Negligent Misrepresentation/ Fraud And Misrepresentation

Plaintiffs' Complaint asserts separate causes of action for "Negligent Misrepresentation" (Count 2) and "Fraud and Misrepresentation" (Count 6). (*See* Doc. 1 at ¶¶ 51-52, ¶¶ 63-71). However, the allegations made in support of each cause of action are very similar and both appear to be based on Plaintiffs' assertion that Defendant should have disclosed to the Superior Court that they were seeking a foreclosure after already obtaining a judgment on the note.

Under Georgia law, in order to make out a claim of fraud or misrepresentation, a plaintiff must allege "(1) a false representation or omission of a *material fact*; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga 2013) (emphasis added).

Plaintiffs' Complaint does not allege specifically what misrepresented facts were material to the case, however, it appears that the argument centers around the failure of Defendant to disclose to the state court that they had already obtained a judgment on the note. As discussed *supra*, there is no validity to the legal argument that the foreclosure was invalid due to the failure to disclose. Since there would be no legal effect of the Defendant making such a disclosure to the court, it cannot be concluded that this was a material fact.

Accordingly, as Plaintiffs have not alleged any material fact that Defendant omitted or misrepresented, it is **RECOMMENDED** that the second cause of action "Negligent Misrepresentation" and the sixth cause of action "Fraud and Misrepresentation" be **DISMISSED**.

### C. Intentional Or Negligent Infliction Of Emotional Distress

Plaintiffs' next cause of action seeks damages for "Intentional or Negligent Infliction of Emotional Distress." (Doc. 1 at ¶ 53). Plaintiffs assert they "suffered damages from the outrageous conduct of Defendant[] and the employees and associates of Defendant[]." (*Id*. at ¶ 54).

To prevail on an intentional infliction of emotional distress ("IIED") claim, a plaintiff must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *See Hendrix v. Phillips*, 428 S.E.2d 91, 92-93 (Ga. Ct. App. 1993). Georgia courts have found liability for IIED "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Sys., Inc.*, 419 S.E.2d 507 (Ga. Ct. App. 1992).

"The burden on a plaintiff asserting a claim for [IIED] is heavy." *Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000).

Defendant argues that Plaintiffs' IIED claim should be dismissed because Plaintiffs have failed to allege sufficient facts to support their claim. (Doc. 5-1 at 15-16). The undersigned agrees. Plaintiffs' IIED claim is nothing more than a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements …." *Iqbal*, 556 U.S. at 678. Indeed, the only "allegations" Plaintiffs make is the assertion that Plaintiffs "suffered damages from the outrageous conduct of Defendant[] and the employees and associates of Defendant[]" and that Plaintiffs' "injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence." (Doc. 1 at ¶ 54). But these allegations are plainly insufficient to state a plausible claim because they fail to identify any particular conduct by Defendant that supports an IIED claim, much less conduct of an extreme and outrageous nature. *Peterson v. Merscorp Holdings, Inc.*, No. 1:12–cv–00014–JEC, 2012 U.S. Dist. LEXIS 128288, at *17 (N.D. Ga. Sept. 10, 2012) (dismissing the plaintiffs' intentional infliction of emotional distress claim because "[t]hey merely assert[ed] that defendants caused them emotional distress, but fail[ed] to give any exposition of how defendants' behavior was extreme and outrageous"). Even if the Court looks to the remainder of the

Complaint in an attempt to find allegations to support the cause of action, no support can be found, especially considering that it is undisputed that Plaintiff Connie Mayhew was in default on the Note meaning Defendant had the right to foreclose.

Additionally, Plaintiffs' claim for negligent infliction of emotional distress must fail as Georgia law requires that "a plaintiff prove…(1) a physical impact on the plaintiff, (2) that the impact causes physical injury to the plaintiff, and (3) that the physical injury to the plaintiff causes his or her emotional distress." *Hill v. Ford Motor Co.*, 975 F. Supp. 2d 1351, 1360 (N.D. Ga. 2013) (citing *Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82 (Ga. 2000)).  Plaintiffs have not alleged that they were physically impacted in any way nor have they alleged a physical injury causing emotional distress.

Accordingly, as Plaintiffs have failed to allege facts necessary to state a claim, it is **RECOMMENDED** that Plaintiffs' third cause of action, "Intentional or Negligent Infliction of Emotional Distress," be **DISMISSED**.

### D.  Negligence

Plaintiffs' fourth cause of action asserts a claim for "negligence" alleging that Defendant "had a duty to act in a fair and reasonable manner" and "committed tortuous and unconscionable acts towards Plaintiffs."  (Doc. 1 at ¶ 56).  Plaintiffs

go on to argue that they "suffered injuries as a consequence of such actions, to include, but not limited to, emotional distress; slander of title; inability to exercise full enjoyment of his property, including the right to sell said property; and attorney's fees and other costs." (*Id.* at ¶ 58).

Under Georgia law, the necessary elements of a negligence claim "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Ceasar v. Wells Fargo Bank, N.A.*, 744 S.E.2d 369, 373 (Ga. Ct. App. 2013). Plaintiffs have failed to allege any facts that support these elements. Critically, they fail to identify the legal duty owed to them by Defendant or how Defendant breached that duty. Moreover, "[t]here is no confidential relationship giving rise to a duty between a lender and a borrower." *Smith-Tyler v. Bank of Am., N.A.*, No. 1:12-CV-1347-TWT, 2014 U.S. Dist. LEXIS 6022, at *14 (N.D. Ga. Jan. 16, 2014) (citing, *inter alia*, *Pardue v. Bankers First Fed. Sav. & Loan Ass'n*, 334 S.E. 2d 926 (Ga. Ct. App. 1985) ("There is . . . no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests.")).

Plaintiffs do not specifically state what they allege supports their negligence claim, however, to the extent that Plaintiffs are attempting to establish a negligence

claim for breach of a contractual duty, they must show that, in addition to breaching the contract, Defendant breached an independent duty imposed by law. *See Phillips v. Ocwen Loan Servicing, LLC*, No. 1:12–cv–3861–WSD, 2013 U.S. Dist. LEXIS 129721, at *14 (N.D. Ga. Sept. 11, 2013) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.") (citing *Fielbon Dev. Co. v. Colony Bank of Houston Cnty.*, 660 S.E.2d 801 (Ga. Ct. App. 2008)); *see also Adams v. JP Morgan Chase Bank*, No. 1:10–CV–04226–RWS, 2011 U.S. Dist. LEXIS 67982, at *11-12 (N.D. Ga. June 24, 2011) ("It is well settled that mere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law.") (quotations omitted).

Here, Plaintiffs have not alleged duties Defendant owed to Plaintiffs other than those arising from the Note and Security Deed, which are contractual in nature. To survive the motion to dismiss, Plaintiffs needed to point to an independent duty created by law that Defendant violated, but they failed to do so.

Accordingly, as Plaintiffs have failed to allege facts necessary to state a

claim, it is **RECOMMENDED** that Plaintiffs' fourth cause of action "Negligence" be **DISMISSED**.

### E. Fair Debt Collection Practices Act Violations

Under the heading "Fifth Cause of Action (Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq)," Plaintiffs claim that Defendant "used false and misleading tactics to collect a debt from Plaintiffs in furtherance of a racketeering enterprise." (Doc. 1 at ¶ 60). Plaintiffs provides no further detail or facts to support their claim.

"In enacting the FDCPA, Congress sought 'to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (quoting 15 U.S.C. § 1692(e)). "Accordingly, the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as the use of 'unfair or unconscionable' means of collection." *Id.* (quoting 15 U.S.C. §§ 1692(e) and 1692f)). To prevail on an FDCPA claim, a plaintiff must establish that:

> (1) [he has] been the subject of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Frazier v. Absolute Collection Serv.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2010) (quoting *Buckley v. Bayrock Mortg. Corp.*, No. 1:09-cv-1387-TWT, 2010 U.S. Dist. LEXIS 10636, at *21 (N.D. Ga. Feb. 5, 2010)), *adopted by* 767 F. Supp. 2d 1354, 1359 (N.D. Ga. 2011).

The allegations in Plaintiffs' complaint do not even attempt set forth that Defendant qualifies a debt collector under the act, or that Defendant engaged in a prohibited act. However, even if Plaintiffs had made such allegations, the FDCPA claim would still fail as a matter of law as the statute of limitations has run and the debt cannot qualify as a protected debt under the statute.

All claims brought under the FDCPA must be brought within one year of the accrual of the cause of action. 15 U.S.C. § 1692k(d). While it is not clear what conduct Plaintiffs believe is a FDCPA violation, Plaintiffs do not allege in the Complaint any action taken by Defendant since the foreclosure sale was completed on November 1, 2011. Any claim under the FDCPA should have been filed by November 1, 2012 however Plaintiffs did not file their Complaint until May 2, 2014. Therefore, the Plaintiffs' FDCPA claim is time barred.

Even if Plaintiffs' claim was not time barred they still would not be able to allege a violation under the FDCPA. "To recover under the FDCPA, 'a plaintiff must make a threshold showing that the money being collected qualifies as a "debt." ' " *Jenkins v. McCalla Raymer, LLC*, No. 1:10-CV-03732-CAP-AJB, 2011 U.S. Dist. LEXIS 95652, at *54 (N.D. Ga. July 28, 2011) (quoting *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010)). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Plaintiffs cannot make this threshold showing because this debt originated as a loan so that Plaintiffs could take full ownership of the trailer park community which they used as a rental property. (Doc. 1 at ¶ 10). Debts incurred through business loans or activity relating to rental properties or for investment purposes do not fall under the protection of the FDCPA. *See, e.g.*, *Cowley v. Branch Banking and Trust Co.*, No. 8:10-cv-2263-T-26AEP, 2010 U.S. Dist. LEXIS 133484 at *2 (M.D. Fla. Dec. 16, 2010); *Klahn v. Clackamas Cnty. Bank*, No. 3:13-CV-621-ST, 2013 U.S. Dist. LEXIS 103524, at *4 (D. Or. July 24, 2013). Therefore, even if

evidence were presented of unfair practices by Defendant, Plaintiffs cannot recover under the FDCPA as a matter of law.

Accordingly, it is **RECOMMENDED** that the fifth cause of action, "Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq.," be **DISMISSED**.

### F. Unjust Enrichment

Plaintiffs argue that Defendant's conduct has led to Defendant being unjustly enriched as a result of the foreclosure sale. Plaintiffs however have failed to allege facts which support this contention, namely how Defendant was unjustly enriched. Plaintiffs' Complaint alleges that Defendant "made false representations to the court to obtain both a judgment and to conduct a fraudulent foreclosure in order to wrongfully take the property of Plaintiffs." (Doc. 1 at ¶ 74). Under Georgia law, "unjust enrichment is available only when there is no legal contract." *Joseph v. Federal Home Loan Mortg. Corp.*, No. 1:12–CV–01022–RWS, 2012 U.S. Dist. LEXIS 159355, at *17 (N.D. Ga. Nov. 6, 2012) (citing *Am. Casual Dining, L.P. v. Moe's Southwest Grill, LLC,* 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006)). Therefore, because Plaintiff's claim stems from a loan contract, unjust enrichment does not apply. *See Simpson v. Countrywide Home Loans*, No. 1:10-CV-0224-CAM-ECS, 2010 U.S. Dist. LEXIS 81389, at *20-21 (N.D. Ga. Apr. 26,

2010) (dismissing unjust enrichment claim where Plaintiff's claim was derived from a loan contract), *adopted by* 2010 U.S. Dist. LEXIS 81384 (N.D. Ga. Aug. 11, 2011).  Furthermore, Plaintiffs support their cause of action with a conclusory statement containing no facts, which is insufficient to state a claim for relief.  *See Joseph*, 2012 U.S. Dist. LEXIS 159355, at *17 (dismissing unjust enrichment claim where plaintiff "include[d] a single conclusory statement that Defendants have been unjustly enriched and no factual matter to support the cause of action").

Accordingly, as Plaintiffs have failed to allege facts necessary to state a claim, it is **RECOMMENDED** that Plaintiffs' seventh cause of action "Unjust Enrichment" be **DISMISSED**.

### G.  Breach Of Good Faith And Fair Dealing

Plaintiffs' final cause of action alleges, without any explanation or factual basis provided, that Defendant "breached its implied promises of good faith and fair dealing with Plaintiffs…by entering into a racketeering enterprise with Bob E. Thomas."  (Doc. 1 at ¶¶ 78-79).  Under Georgia law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."  *Martin v. Hamilton State Bank*, 723 S.E.2d 726, 727 (Ga. Ct. App. 2012).  "This duty, however, does not create an independent cause of action disconnected from the contract from which it arises."  *Pace v. CitiMortgage, Inc.*,

No. 4:12–cv–127 (CDL), 2013 U.S. Dist. LEXIS 597, at *11 (M.D. Ga. Jan. 3, 2013). "If no contract provision exists upon which this duty of good faith can be imposed, then no cause of action exists for the failure to act in good faith …." *Id.* (citing *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001)).

Although Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing by engaging in "racketeering," they do not direct the undersigned "to a provision in an enforceable contract which [Defendant] allegedly failed to perform in good faith." *Pace*, 2013 U.S. Dist. LEXIS, at *11; *see also American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("[I]n order to state a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual term of an agreement. General allegations … not tied to a specific contract provision are not actionable."). Further, Plaintiffs have not alleged any breach of contract claims in their complaint and even if one of their other claims were interpreted as a breach of contract claim, each claim has failed for the reasons stated above.

Accordingly, as Plaintiffs have failed to allege facts necessary to state a claim, it is **RECOMMENDED** that Plaintiffs' eighth cause of action be

**DISMISSED**.

**Conclusion**

It is **RECOMMENDED** that Defendant BB&T's motion to dismiss (Doc. 5) be **GRANTED** and Plaintiffs' Complaint be **DISMISSED**. The Clerk is **DIRECTED** to terminate referral of this matter to the undersigned magistrate judge.

**IT IS SO REPORTED AND RECOMMENDED** this <u>23rd</u> day of <u>October</u>, 2014.

 <u>/s/ *J. CLAY FULLER*</u>
J. CLAY FULLER
United States Magistrate Judge
